**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| Dmitri Ali Davis,<br><br>                              Plaintiff,<br><br>             -v-<br><br>Officer Maffei, NCPD, et al.,<br><br>                              Defendants. | | 2:25-cv-4567<br>(NJC) (ARL) |
| Dmitri Ali Davis,<br><br>                              Plaintiff,<br><br>             -v-<br><br>Detective Anthony Sorrentino, Shield No. 728,<br><br>                              Defendant. | | 2:25-cv-6307<br>(NJC) (ARL) |
| Dmitri Ali Davis,<br><br>                              Plaintiff,<br><br>             -v-<br><br>Officer Maffei, NCPD, et al.,<br><br>                              Defendants. | | 2:25-cv-6532<br>(NJC) (ARL) |

## MEMORANDUM AND ORDER

NUSRAT J. CHOUDHURY, United States District Judge:

Presently before the Court is an application to proceed in forma pauperis ("IFP") filed in

each of the above-captioned cases brought by Dmitri Ali Davis, proceeding pro se.[1] (*See*

---

[1] The Court denied Davis's IFP application without prejudice and with leave to renew in the case

Compl., ECF No. 1 in each case; IFP App., ECF No. 8, 2:25-cv-4567 ("Davis I"); IFP App., ECF Nos. 2, 6, 2:25-cv-6307 ("Davis II"); and IFP App., ECF Nos. 2, 5, 2:25-cv-6532 ("Davis III").) Upon review, the applications to proceed IFP are granted. For the reasons that follow, the Court consolidates these actions solely for the purpose of this Memorandum and Order and dismisses the Complaints pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

## BACKGROUND

### I.      The Complaints

The Complaints concern Davis's 1998 state court conviction.[2]  In the first and third Complaint, Davis names the same five defendants: Nassau County police officer Maffei, Nassau County detective Lloyd Doppman, Nassau County detective Anthony Sgueglia, and court-appointed attorneys Michael Berger, Esq. and Martin I. Silberg, Esq.[3]  (Davis I, ECF No. 1 at 1–3; Davis III, ECF No. 1 at 1–3.) The second Complaint names Nassau County detective Anthony Sorrentino, Shield No. 728, as the sole defendant. (Davis II, ECF No. 1 at 1–2.)

---

he filed on August 15, 2025. *See* 2:25-cv-04567(NJC)(ARL) *Davis v. Officer Maffei, et al.,* Order, dated December 9, 2025, ECF No. 7.

[2] Davis plead guilty to, and was convicted of, Sexual Abuse in the First Degree and was sentenced to a determinate term of three years of incarceration. *See Davis v. Nassau Cnty.*, 524 F. Supp. 2d 182 (E.D.N.Y. 2007). Davis unsuccessfully challenged that conviction by filing a petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court. *Id.* (dismissing petition and holding that "the sex offender registration requirement, including any penalties resulting from failure to comply with that requirement, are collateral consequences from the underlying expired conviction and, thus, cannot satisfy the 'in custody' requirement for purposes of federal habeas review on the underlying conviction").

[3] Berger is alleged to be a "Legal Aid Lawyer" and Silberg is alleged to be an "18B lawyer."

### A.    Davis I

According to the Davis I Complaint, on September 16, 1997, Maffei gave a "fabricated statement" against Davis in retaliation for a "confrontation we had in my neighborhood." (Davis I, ECF No. 1 at 5 ¶ III, 8.) As a result, Davis was arrested by Doppman and Sgueglia on a warrant for an "open container" but without a "warrant for felony sex charges." (*Id.*) With regard to the allegations against the court-appointed attorneys,[4] Berger and Silberg, the Davis I Complaint alleges that they "[d]id nothing to defend me" and that they "didn't file one motion." (*Id.*) Davis alleges that he has suffered "[e]motional and psychological trauma as a result. Mental anguish and reputational damage. Loss of [l]iberty, [e]conomic harm." (*Id*. at 6 ¶ IV.) For relief, Davis seeks:

> [a] declaratory judgement that my 9/16/97 arrest was unconstitutional due to the lack of a valid judge-signed warrant issued prior to that date and the absence of a true bill. An order compelling Nassau County to produce a valid judge signed warrant and true bill. If neither exists, a ruling that my arrest and detention violated the 4th and 14th Amendments along with any further relief the court deems just and proper.

(*Id*. at 6 ¶ V.)

### B.  Davis II

The Davis II Complaint names Sorrentino as the sole defendant and alleges that, on or around March 23, 1994, Davis was arrested by Sorrentino and was "charged with two counts of criminal sale and two counts of criminal possession of a controlled substance for allegedly

---

[4]  According to the Complaint, Berger was appointed by the state court to represent Davis during his arraignment on the indictment and "allowed an indictment to proceed that contained a forged 'Denis Dillon' signature – a signature he knew was not authentic.'" (*Id.* at 9.) Silberg was Davis's "other court-appointed attorney" who is alleged to have "repeated the same dereliction of duty. He too allowed the forged prosecutor's signature, the missing grand jury foreperson's signature, and the indictment's non-compliance with CPL § 200.50 to go unchallenged." (*Id.*)

selling three $20 bags of cocaine." (Davis II Compl., ECF No. 1 at 1–2, 5, 8.) Davis was

"charged with four Class B felonies and offered one year in county jail as part of a plea bargain"

so he "pleaded guilty" because, "if convicted at trial, [Davis] faced a potential sentence of 33 1/3

years to life." (*Id*. at 8.) According to the Davis II Complaint, "[t]his arrest and prosecution were

not based on lawful evidence but were motivated by racial and religious discrimination due to

my known affiliation with the Nation of Gods and Earths (Five Percent Nation)." (*Id*.) The Davis

II Complaint describes that "[t]he Nassau County Police Department frequently targeted

individuals in my neighborhood who were members of the Five Percent Nation, which it

perceived as a 'Black-supremacist' or 'anti-white' organization and as a threat to the white

community." (*Id*.)

> As a result, Davis claims to have suffered

> [e]motional and psycological [sic] trauma, mental anguish, humiliation and
> reputational damage. Loss of liberty from unlawful imprisonment. Economic
> harm from inability to work and long term effects of having a felony record.

(*Id*. at 6 ¶ IV.) For relief, Davis seeks

> [a] declaratory judgment that my 1994 arrest and conviction were unconstitutional
> due to the absence of a valid judge signed warrant and probable cause affidavit.
> An order compelling Nassau County to produce any such warrant or affidavit, and
> if none exists, a ruling that my arrest and subsequent prosecution violated my
> rights under the 1st, 4th, 5th, and 14th amendments along with any further relief that
> the Court deems just and proper.

(*Id*. at 6 ¶ V.)

### C.  Davis III

Like the Davis I Complaint, the Davis III Complaint names Maffei, Doppman, Sgueglia,

Berger, and Silberg as Defendants and arises from the same 1997 criminal charges under Nassau

County Indictment No. 2777-97. (Davis III, ECF No. 1 at 1–4.) More specifically, Davis alleges

4

that he was convicted in July 2004 in Oklahoma City under Case No. CF-2004-4178 for failing

to register as a sex offender upon his guilty plea. (*Id*. 4–5, 8–9.) According to the Davis III

Complaint, the

> Oklahoma conviction itself was a direct result of Nassau County's unlawful
> actions. The only reason Oklahoma initiated a Failure to Register case was
> because Nassau County falsely and illegally labeled me [as a sex offender] based
> on a void ab initio conviction that never should have existed. Therefore, the
> Oklahoma arrest, prosecution, conviction, imprisonment, probation, and
> subsequent violation were all collateral consequences caused by Nassau County's
> unconstitutional and fraudulent void ab initio case.

(*Id.* at 9.) Davis claims that

> [t]hese three unlawfully created felonies ['the fabricated 1994 drug case'; 'the
> fabricated 1997 sex offense case'; and 'the 2004 Failure to Register Case No. CF-
> 2004-4178 in Oklahoma, which stemmed entirely from the 1997 void ab initio
> conviction'] added extraordinary and illegal burden to my life, increasing the
> strain on every aspect of my existence – including housing, employment, personal
> safety, and public perception. All of these harms flow directly from Nassau
> County's original misconduct.

(*Id*.) As a result, Davis claims to have

> suffered a loss of liberty, incarceration, emotional distress, reputational harm, and
> long term legal consequences. These injuries came directly from being charged
> and prosecuted for an offense that was void ab initio. I did not receive any
> medical treatment, because the harm was the deprivation of freedom and the
> psycological [sic] and life impact caused by the void ab initio charge.

(*Id*. at 6 ¶ IV.) For relief, Davis "request[s] that the court award whatever damages the

jury finds appropriate based on the injuries [he] suffered. (*Id*. ¶ V.)

## II.     Relevant Procedural History

Davis's litigation history in the Eastern District of New York began some twenty-seven

years ago when Davis filed his first IFP complaint, 0:99-cv-01059, *Davis v. Jablonsky*, that was

dismissed for lack of subject matter jurisdiction. *See* 0:99-cv-1059, ECF No. 24. Since then, in

5

addition to the three present actions, Davis has filed four civil cases (including an unsuccessful habeas petition) which, collectively, name all of the Defendants here except for Sorrentino, relating to the 1997 criminal conviction giving rise to his present claims.[5] *See Davis v. Ennis,* 2:04-cv-03987, ECF No. 37 (granting defendants' summary judgment motion dismissing Section 1983 complaint challenging Davis's 1997 arrest and 1998 conviction upon his guilty plea as time-barred); *Davis v. Nassau Cnty.*, 524 F. Supp. 2d 182 (E.D.N.Y. 2007) (denying petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 and "hold[][ing] that the sex offender registration requirement, including any penalties resulting from failure to comply with that requirement, are collateral consequences from the underlying expired conviction and, thus, cannot satisfy the 'in custody' requirement for purposes of federal habeas review . . ."); *Davis v. Berger et al*, 2:18-cv-2531, ECF No. 5 (granting IFP motion and sua sponte dismissing Section 1983 claims against Berger and Silberg because they are not state actors); *Davis v. Ennis*, 2:23-cv-4859, ECF No. 7 (granting IFP motion and sua sponte dismissing IFP Section 1983 complaint against Berger, Silberg, Maffei, Doppman, and others, pursuant to 28 U.S.C. § 1915(e)(2)(B) because, inter alia, defense attorneys were private actors who did not act under color of state law, and success on Davis's Section 1983 claims against the police officers would implicate the validity of his conviction and are barred because the underlying criminal proceedings have not been terminated in his favor).

## DISCUSSION

Davis's Complaints are each brought pursuant to 42 U.S.C. § 1983 ("Section 1983") and allege deprivations of his constitutional rights as guaranteed by the First, Fourth, Fifth, Sixth,

---

[5] The prior actions do not reference his 1994 arrest and conviction.

Eighth, and Fourteenth Amendments. (ECF No. 1 in each case at ¶ II.B.) Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by . . . the United States Constitution . . . ." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). For the following reasons, Davis's Section 1983 claims must be dismissed.

## I.      *Heck's* Delayed Accrual Rule Precludes Davis's Claims

When a claim under Section 1983 calls into question the validity of an underlying conviction, a district court must dismiss the claim, unless the conviction has been invalidated. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) (*Heck* bar applies regardless of whether a plaintiff seeks damages or injunctive relief). In other words, "a § 1983 cause of action . . . attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Heck*, 512 U.S at 489–90.

Insofar as Davis brings Section 1983 claims that challenge his arrest, detention, prosecution, guilty plea, and the collateral consequences thereof (*i.e.*, the requirement that he maintain his registration as a sex offender), success on these claims would impugn the validity of the criminal convictions and sentences in the state court. *Heck* requires dismissal where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence" and the "conviction or sentence has [not] already been invalidated." 512 U.S. at 487. In *Heck*, the Supreme Court enumerated four methods of demonstrating that a conviction has been invalidated: (1) the conviction was reversed on a direct appeal; (2) an executive order expunged the conviction; (3) a federal court ruled on a habeas corpus petition; or (4) an authorized state tribunal declared the conviction invalid. *Id*. at 486–87.

Here, Davis challenges two separate convictions: a 1994 guilty plea to "four Class B felonies" relating to criminal possession and sale of a controlled substance (cocaine) (Davis II, ECF No. 1 at 8) and 1998 guilty plea to Sexual Abuse in the First Degree (Davis I and Davis III, ECF No. 1). Fatal to his present Section 1983 claims, Davis does not assert that his convictions have been reversed on direct appeal, expunged by executive order, or that an authorized state tribunal has declared the conviction invalid. (*See* Compls., *generally.*) Nor can he claim that a federal court granted a habeas petition given that he has not challenged the 1994 conviction by filing a habeas petition in federal court and his habeas petition brought pursuant to 28 U.S.C. § 2254 challenging the 1998 conviction was denied. *See Davis*, 524 F. Supp. 2d at 182. As is readily apparent, success on Davis's claims in these Complaints would impugn the validity of his convictions and sentences. Davis's claims in each of the three Complaints are therefore precluded by *Heck's* delayed accrual rule.

Accordingly, the Davis I, Davis II, and Davis III Complaints are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)–(ii).

## II.    Claim Preclusion

"There are limits as to how often the Court can be asked to review the same allegations against the same parties. That limitation is manifested in the doctrine of res judicata." *Baker v. Supreme Ct. for N.Y.*, No. 12-cv-5757, 2013 WL 372005, at *1 (E.D.N.Y. Jan. 29, 2013) (citing *Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993)). The doctrine of res judicata bars a plaintiff from litigating claims that were already raised or could have been raised in a prior action decided on the merits against the same defendants or their privies. *See Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017). "Even claims based upon different legal

theories are barred provided they arise from the same transaction or occurrence." *Cieszkowska v. Gray Line New York*, 295 F.3d 204, 205 (2d Cir. 2002) (*per curiam*) ("Once a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties or those in privity with them concerning the transaction, or series of connected transactions, out of which the first action arose.") (alterations omitted). "[R]es judicata applies to pro se plaintiffs whose claims in a second action are based on the same factual predicates presented in the first action." *Bey v. City of New York*, 454 F. App'x 1, 5–6 (2d Cir. 2011) (citing *Cieszkowska*, 295 F.3d at 205–06). Further, "a district court may raise a res judicata issue sua sponte." *Corley v. Farrell*, 833 F. App'x 908, 909 (2d Cir. 2021).

The Second Circuit has repeatedly confirmed that "[u]nder both New York law and federal law, the doctrine of res judicata, or claim preclusion, provides that [a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Sikorsky v. City of Newburgh, New York*, 136 F.4th 56, 62 (2d Cir. 2025); *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997); *see also Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). Thus, claim preclusion bars re-litigation if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Sikorsky*, 136 F.4th at 62; *see also Blinkoff v. City of Torrington*, No. 23-717, 2025 WL 502041, at *1 (2d Cir. Feb. 14, 2025) (same).

9

Here, res judicata bars Davis from asserting in his Davis I and Davis III Complaints[6] claims regarding his 1998 criminal conviction in light of the previous actions adjudicated in this District. In each of those actions, there has been an "adjudication on the merits." *See Davis v. Ennis, et al.*, 2:04-cv-03987, ECF No. 37 (granting summary judgment to defendants (including Doppman and Sgueglia) and finding Davis's Section 1983 claims stemming from his 1997 arrest and his 1998 plea to, and conviction of, Sexual Abuse in the First Degree, barred by the three-year statute of limitations); *Davis v. Berger, et al.*, 2:18-cv-02531, ECF No. 5 (granting IFP motion and sua sponte dismissing Section 1983 claims against Berger and Silberg without leave to amend because they are not state actors); *Davis v. Ennis et al.*, 2:23-cv-04859, ECF No. 7 (granting IFP motion and sua sponte dismissing Section 1983 claims against Berger, Silberg, Doppman, and Maffei).

The previous actions also involved the same parties because all of the Davis I and Davis III Defendants are named in at least one of the prior actions. *See id*. Finally, the claims asserted in these subsequent Complaints were or could have been raised in the prior actions because they all pertain to "the same factual predicates" regarding the events leading up to, and consequences of, Davis's 1998 conviction. *See id*.

Accordingly, the Davis I and Davis III Complaints are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)–(ii) on the additional basis that they are barred by res judicata.

---

[6] Res judicata does not bar the claims in the Davis II Complaint, which pertain to Boyle's 1994 conviction for "four Class B felonies" relating to criminal possession and sale of a controlled substance therefore arise from separate factual predicate from the 1997 arrest and charges relating to sexual abuse.

10

### III.    Failure to State a Claim

Although *Heck* and preclusion bar adjudication of Davis's claims, the claims against Davis's criminal defense attorneys Berger and Silbert are not plausible for the additional reason that neither of them are state actors. Section 1983 "constrains only state conduct, not the 'acts of private persons or entities.'" *Hooda v. Brookhaven Nat'l Lab.*, 659 F. Supp. 2d 382, 393 (E.D.N.Y. 2009) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982)). Accordingly, "a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks and citation omitted); *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) ("A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is [ ] required to show state action." (internal quotation marks and citation omitted)). Indeed, "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks and citation omitted).

A private actor such as Berger or Silbert may be considered as acting under the color of state law for purposes of Section 1983 if the private actor was a "willful participant in joint activity with the State or its agents." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). Section 1983 liability may also extend to a private party who conspires with a state actor to violate a plaintiff's constitutional rights. *See Ciambriello*, 292 F.3d at 323–24. In order to state a Section 1983 conspiracy claim, a plaintiff must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in

11

furtherance of that goal causing damages." *Id*. at 324–25 (citing *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)). "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Id*. at 324 (internal quotation marks omitted).

Here, insofar as Davis seeks to impose liability on his defense attorneys for his claimed constitutional deprivations, such claims are not plausible because these defendants are not state actors. Attorneys, whether court-appointed or privately retained, are generally not state actors for purposes of Section 1983. *See*, *e.g*., *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *see also Rodriguez v. Weprin*, 116 F.3d 62, 65–66 (2d Cir. 1997) ("[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to [a] defendant [in a criminal proceeding] do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983"). Nor has Davis sufficiently alleged that Berger or Silberg acted jointly with a state actor or conspired with a state actor to deprive Davis of some constitutional right. Wholly absent from Davis's multiple submissions are any factual averments from which the Court could reasonably infer joint action or a conspiracy with a state actor. (*See* Compls., *generally*.) Thus, in the absence of any state action, Davis's Section 1983 claims against Berger and Silberg are not plausible as a matter of law and are therefore dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)–(ii). *Ciambriello*, 292 F.3d at 325.

### IV.    State Law Claims

A district court "may decline to exercise supplemental jurisdiction over a claim . . . [where it] has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). "In the usual case in which all federal-law claims are eliminated before trial, the

12

balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims." *Chinniah v. FERC*, 62 F.4th 700, 703 (2d Cir. 2023). Having dismissed the federal claims alleged in the Complaints for the reasons set forth above, the Court declines to exercise supplemental jurisdiction over any remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 405 (2d Cir. 2017) (Calabresi, J., concurring) (the Second Circuit "takes a very strong position that state issues should be decided by state courts").

## V.      Leave to Amend

A pro se plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. Cty. of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (quotation marks and citation omitted). Given that the deficiencies with Davis's federal claims are substantive and could not be cured with better pleading, amendment would be futile. Accordingly, the Court declines to grant leave to amend the Complaints.

## VII.    All Writs Act Warning

Under the All Writs Act, a federal court "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "The All-Writs Act grants district courts the power, under certain circumstances, to enjoin parties from filing further lawsuits." *MLE Realty Assocs. v. Handler*, 192 F.3d 259, 261 (2d Cir. 1999). Those circumstances include cases where a litigant engages in the filing of repetitive and frivolous suits. *See Malley v. N.Y. City Bd of Educ.*, 112 F.3d 69 (2d Cir. 1997) (*per curiam*) (filing injunction may issue if numerous complaints filed are based on the same events); *In re Martin-Trigona*, 9 F.3d 226, 228 (2d Cir. 1993). Indeed, this Court has an

13

"obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment, and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel." *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000) (cleaned up). Such an injunction, while protecting the courts and parties from frivolous litigation, should be narrowly tailored so as to preserve the right of access to the courts. In addition, the Court must provide the plaintiff with notice and an opportunity to be heard before imposing a filing injunction. *Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir. 1998) (*per curiam*).

The Second Circuit has identified five factors to be considered in restricting a litigant's access to the court system:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 714 (2d Cir. 2019). Davis's present Complaints together with his prior cases in this Court (2:04-cv-03987; 2:18-cv-02531; and 2:23-cv-04859) demonstrate a pattern of duplicative, frivolous filings. In light of his pro se status, notwithstanding Davis's litigation history, upon careful consideration of these factors, the Court will not order Davis to show cause at this time why a litigation injunction should not be entered. Should he continue in this course of conduct, however, the Court may, after notice and an opportunity to be heard, bar Davis from filing any further complaint against these Defendants or their privies about the subjects set forth in the present Complaints and the dismissed complaints in 2:23-cv-04859, 2:18-cv-02531, and 2:04-cv-3987.

**CONCLUSION**

For the reasons set forth above, the Court grants the IFP motions in each of the present Complaints and dismisses the claims therein pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)–(ii). Davis is warned that the filing of any new complaint against these Defendants or their privies about the subjects set forth in the present Complaints and the dismissed complaints in 2:23-cv-04859, 2:18-cv-02531, and 2:04-cv-3987 may, after notice and opportunity to be heard, bar Davis from pursuing such claims. The Clerk of the Court shall mail this Order to Davis at his address of record and shall note such mailing on the docket.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore IFP status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

Dated: Central Islip, New York
      May 3, 2026


                                    */s/ Nusrat J. Choudhury*
                                     NUSRAT J. CHOUDHURY
                                     United States District Judge

15